# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**MICHAEL W. FRERET, JR.**                                                              **PLAINTIFF**

**v.**                                         **CIVIL NO. 1:21-cv-00019-HSO-RHWR**

**KILOLO KIJAKAZI,**                                                                        **DEFENDANT**
*Acting Commissioner of Social Security*[1]

## REPORT AND RECOMMENDATION

Plaintiff Michael W. Freret, Jr. seeks judicial review of the Commissioner of Social Security's decision denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 405(g). Having reviewed Plaintiff's Brief [9], the Commissioner's Brief [11], the administrative record [8], and relevant law, it is recommended that the decision of the Commissioner be affirmed. Contrary to Plaintiff's sole contention, the Administrative Law Judge ("ALJ") articulated how other medical evidence and opinions of record were inconsistent with the opinions of Rand S. Metoyer, M.D., Plaintiff's treating pain management doctor for approximately four years.

## I. BACKGROUND

Plaintiff applied for Title II benefits on February 12, 2019, alleging disability beginning September 15, 2012, when he was 32 years of age. [8] at 14, 20. The parties do not dispute that Plaintiff's earning records show that he acquired sufficient

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is automatically substituted in place of Andrew Saul as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

quarters of coverage to remain insured under Title II through December 31, 2015. *Id.* at 14. They agree that the issue is whether Plaintiff was disabled within the meaning of Title II from September 15, 2012 through December 31, 2015. *Id.* at 14.

Plaintiff has a high school education, some college, and vocational training while serving in the Army from 1999 until 2004 and while serving in the Air Force from 2005 until 2009. *Id.* at 76-77. He worked in the past as a boilermaker and pipefitter helper. *Id.* at 25. In his application, Plaintiff asserted that he was disabled due to depression, anxiety, bipolar disorder, cysts on back, hypothyroidism, degenerative disc disease ("DDD"), knee problems, back problems, hip problems, shoulder problems, immune system problems, irritable bowel syndrome, constipation, migraines, neck problems, hearing loss, internal and external hemorrhoids, sleep apnea, carpal tunnel syndrome ("CTS"), memory problems, chronic pain, radiculopathy, and hypertension. *Id.* at 20, 201.

Plaintiff's application was denied initially and upon reconsideration. He requested a hearing before an ALJ, and a hearing was held on January 9, 2020. *Id.* at 67-103. Plaintiff and a vocational expert testified. The ALJ received new evidence after the hearing and decided to obtain medical expert testimony. *Id.* at 36. He noted that Plaintiff's claim was complicated due to the remote date that Plaintiff was last insured, December 31, 2015. *Id.* at 36, 63, 83. The ALJ observed that Plaintiff's condition was "much worse today than it was in 2015" but explained that he was confined to the evidence that reflected Plaintiff's condition during "the 2015 time period." *Id.* at 72-73. A supplemental hearing was held on July 16, 2020, and the

following medical experts testified: Abdul Ali Elmi, M.D., a board-certified orthopedic surgeon, and Tretor Yaratha, M.D., a board-certified psychiatrist and neurologist. *Id.* at 38-57.

On September 9, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the definition of Title II from September 15, 2012, through December 31, 2015. The ALJ concluded that Plaintiff could not perform his past relevant work as a boilermaker or pipefitter helper but was able to perform the requirements of representative occupations such as lens inserter, implant polisher, and foundation marker. *Id* at 25-27.

On appeal, Plaintiff asserts one assignment of error. He argues that the ALJ should be reversed because he did not delineate how the opinion of Dr. Metoyer, Plaintiff's treating pain management doctor from 2008 through 2012, was inconsistent with other medical evidence in the record. [9] at 7-8. The Commissioner counterargues that the ALJ did address the other medical evidence and opinions that were inconsistent with Dr. Metoyer's opinion, which was "essentially a check-box form that provided no mention of his findings on physical examination or objective testing," and. [11] at 8.

## II. ANALYSIS

A. Standard of Review

The Court reviews the Commissioner's denial of Social Security benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the

evidence. *See* 42 U.S.C. § 405(g); *Salmond v. Berryhill*, 892 F.3d 812, 816-17 (5th Cir. 2018). The Court does not "reweigh the evidence in the record, try the issues *de novo,* or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. *Salmond,* 892 F.3d at 817. "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision. Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (citations and punctuation omitted).

"To determine whether a claimant is disabled, the Commissioner's analysis proceeds along five steps." *Webster v. Kijakazi,* 19 F.4th 715, 718 (2021); *see* 20 C.F.R. § 404.1520(a)(4). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations, (4) whether the claimant can still do "past relevant work," and (5) whether the impairment prevents the claimant from doing any relevant work. *Id.* "The claimant bears the burden on the first four steps." *Webster,* 19 F.4th at 718. "If the claimant advances that far, the burden shifts to the Commissioner to 'prove the claimant's employability.'" *Id.*

The ALJ must articulate how persuasive he or she finds "all of the medical opinions" in a claimant's case record. 20 C.F.R. § 404.1520c(b). The five factors for determining the persuasiveness of a medical opinion are: supportability, consistency, relationship with the claimant, specialization, and other factors (*i.e.*, familiarity with other evidence in the claim or an understanding of Title II's evidentiary

4

requirements). *Id.* § 404.1520c(b), (c). Supportability and consistency are the most important factors, and the ALJ "will explain how [her or she] considered the supportability and consistency factors for a medical source's medical opinions . . . . [The ALJ] "may, but [is] not required to, explain how [he or she] considered the" remaining factors. *Id.* § 404.1520c(b)(2).

"The more relevant the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

B. The Opinion of Rand S. Metoyer, M.D.

A claimant's residual functional capacity ("RFC") is evaluated by determining the most he can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(1), (4). The claimant's RFC is used at the fourth step to determine if he or she can still do past relevant work and at the fifth step to determine whether he or she can adjust to any other type of work. 20 C.F.R. § 404.1520(e). Here, the ALJ found that Plaintiff suffered from the severe impairments of DDD of the lumbar spine, CTS, opioid use disorder, depression, and anxiety. [8] at 16. The ALJ determined that Plaintiff's DDD of the cervical spine, chronic headaches, and bipolar disorder were not severe impairments. *Id.* at 17. The ALJ concluded that during the adjudicatory period, Plaintiff maintained the RFC to

perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following exceptions:

> He cannot climb ladders, ropes, or scaffolds, but he can occasionally climb ramps/stairs. He can occasionally balance, with use of a hand held assistive device. He can occasionally stoop, crouch, kneel, and crawl. He can frequently use the bilateral upper extremities for reaching, including overhead and in all other directions, handling, fingering, and feeling. He is limited to simple, routine, repetitive tasks of unskilled work with occasional interaction with public and coworkers.

*Id.* at 19.

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because "[a]s the Plaintiff's pain management doctor of 4 years, Dr. Metoyer was very familiar with the extent and severity of the Plaintiff's pain" and despite this familiarity, the ALJ "did not delineate how the opinion of Dr. Metoyer was inconsistent with the medical evidence of record. Instead, the [ALJ] merely asserted that the opinion was inconsistent without any rationale to support his decision." [9] at 7-8.

Plaintiff's argument focuses myopically on the following single paragraph of the ALJ's decision, and specifically on the last sentence:

> On August 15, 2012, Dr. Metoyer completed a Clinical Assessment of Pain questionnaire to assist with the claimant's VA appeal. (B11E/5-6). Dr. Metoyer opined the claimant has an underlying medical condition consistent with the pain he experiences, and anxiety and depression also contribute (B11E/5-6). According to Dr. Metoyer's questionnaire responses, the claimant's pain is present to such an extent as to be distracting to adequate performance of daily activities or work; physical activity, such as walking, standing, bending, stooping, moving of extremities, etc. would increase pain to such a degree as to cause distraction from task or total abandonment of task, and the claimant's prescribed medication side effects could be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc.

6

> (B11E/5-6). *The undersigned does not find this opinion persuasive because it is not consistent with or supported by the evidence of record during the applicable time period.*

[8] at 24. (emphasis added).

Plaintiff's position ignores the remaining parts of the ALJ's decision where the ALJ addressed the medical evidence and opinions that were inconsistent with Dr. Metoyer's opinion. The ALJ first analyzed the objective medical evidence as follows:

> There are some abnormal findings on physical examination, such as lumbar tenderness on palpation, mild reduction of lumbar range of motion, and use of an assistive device (B6F/12, 18, 54; B9F/2; B12F/6, and B19F). However, overall physical examinations during the relevant period are generally unremarkable. (B1F-B3F, B6F-B15F). Diagnostic imaging studies, including magnetic resonance imaging (MRI) of the lumbar spine, showed mild degenerative disk disease and lumbar spondylosis, but no frank disc herniation or spinal stenosis (B2F/22-24; B6F/77). Lumber x-rays performed in November 2013 were normal (B1F/28). Electromyography/nerve conduction studies conducted in January 2015 showed minimal to mild right median neuropathy of the right upper extremity consistent with carpal tunnel syndrome, but extensive electrodiagnostic assessment of the right lower extremity was normal.

[8] at 21.

> The ALJ concluded that
>
> the objective evidence, including diagnostic imaging studies and clinical findings on physical examination, ha[ve] shown only mild abnormalities, which are not consistent with the extent and severity of the claimant's allegations of pain.

*Id.* at 22.

The ALJ then assessed the medical opinions for "persuasiveness" and summarized several that were inconsistent with Dr. Metoyer's. The ALJ found "fairly persuasive" a record from December 2012, where a treating source in the section "Nurses Notes"

7

limited the claimant to no heavy lifting and no prolonged sitting, standing, bending, and walking (B19F/10)." *Id.* at 24. The ALJ found "very persuasive" the opinion of treating physician Chykeetra Maltbia, M.D., who opined in August 2015 that "while the claimant has some issues with chronic pain, it is not 'so limiting that it excludes him from being able to perform some job duties.' (B19F/20)." The ALJ credited Dr. Maltbia's opinion that Plaintiff remained functional as demonstrated by the fact that he can drive and do all other activities (*Id.*)." *Id.* at 24. The ALJ observed that Plaintiff "was independent with personal care; drove; prepared light meals; did light household chores; went out alone; used a computer; interacted with family; watched television; and attended church occasionally." *Id.* at 23.

The ALJ found "persuasive" the opinions of VA psychologists, Benjamin Hill, Ph.D, and Beth Curry, Ph.D, who opined that Plaintiff's mental impairments "do not impact his ability to engage in physical and/or sedentary work", nor do his symptoms "preclude him from securing or maintaining substantially gainful employment" (B3F/246, 292: B13F/4)." *Id.* The ALJ found persuasive "[n]umerous 2019 opinions from VA medical providers opining the claimant 'could perform sedentary and light physical activities', and he has no physical limitation that would prevent him from engaging in activities of daily living and 'protecting himself from hazards/dangers of daily environment' (B8F-B12F, B15F-B18F)." *Id.* at 25.

The ALJ found that Plaintiff's pain management treatment was also inconsistent with Dr. Metoyer's opinion. The ALJ emphasized that "[d]uring the period at issue, the claimant had been followed by pain management, but he received only

conservative treatment including narcotic pain medication, physical therapy, injections, and epidurals and/or nerve blocks (B1F, B3F, B6F)." *Id.* at 21. The ALJ observed that pain management treatment records showed "the claimant has reported 'good relief of pain' with injections, as well as some relief with pain medications (B6F/6, 10; B8F/2; B9F/1)." *Id.* at 22. The ALJ further considered that "VA doctors recommended knee surgery, but [Plaintiff] never followed through"; and the medical record reflected a history of opioid use disorder, narcotic abuse, and drug-seeking behavior. *Id.* at 20, 22.

Plaintiff argues that "[a]s the Plaintiff's pain management doctor of 4 years, Dr. Metoyer was very familiar with the extent and severity of the Plaintiff's pain[.]" [9] at 8. The Social Security Administration, however, eliminated the treating source/controlling weight rule for claims filed on or after March 27, 2017, such as Plaintiff's. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our prior caselaw in the past." *Webster*, 19 F.4th at 719. The rules are now aligned to focus more on the content of the medical evidence, and there is not an automatic hierarchy for treating sources, examining sources, and then non-examining sources which must be mechanically applied. 81 Fed. Reg. 62560-01, 2016 WL 4702272 (Sept. 9, 2016); 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57. The Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your

9

medical sources." 20 C.F.R. § 404.1520c(a). "Relationship with the claimant" is a persuasiveness factor, and the rules continue to allow an ALJ to consider an individual's treating source's medical opinion to be the most persuasive medical opinion, but that opinion must be both supported by relevant objective medical evidence and the source's explanation, and consistent with other evidence. 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57.

The ALJ articulated his reasons for rejecting the medical opinion of Dr. Metoyer. As required by 20 C.F.R. § 404.1520c, the ALJ considered both the consistency and supportability of Dr. Metoyer's opinion. Plaintiff is asserting that the record supports greater functional limitations than found by the ALJ, but the Court may not reweigh the evidence. While Plaintiff asserts that Dr. Metoyer's opinion supported a different conclusion, it is the sole responsibility of the ALJ to weigh the competing evidence to determine a claimant's RFC. The fact that the ALJ viewed the evidence differently than Plaintiff is not grounds for reversal. Substantial evidence supports the ALJ's RFC determination, and the Court is not at liberty, under the law, to change the outcome.

### III. RECOMMENDATION

The ALJ's September 9, 2020, decision should be affirmed, and Plaintiff's appeal dismissed with prejudice.

### IV. NOTICE OF RIGHT TO OBJECT

Within fourteen days after being served with a copy, any party may serve and file with the Clerk of Court written objections to this Report and Recommendation.

Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection. L.U.Civ.R. 72(a)(3).

A district judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 1st day of June, 2022.

*s/ Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE